W. S. RICHARDSON, *Appellee,* v. O. H. SIMPSON et al., as the Kansas State Board of Dental Examiners, *Appellants.*

No. 17,879.

SYLLABUS BY THE COURT.

1. DENTIST'S LICENSE—*Revocation—By Board of Examiners—Conclusive.* Where the state board of dental examiners, acting within its jurisdiction, revokes the license of a dentist for alleged misconduct, and an action is brought to enjoin the enforcement of the order, on the ground that it was fraudulently made, a finding by the court that the members of the board acted honestly and impartially, and not arbitrarily, compels a judgment sustaining their decision, notwithstanding a further finding that their action was oppressive.

2. ——— *What Constitutes a False Statement Under the Statute.* The making of a promise without an intention to perform it may amount to a false statement as to an existing condition within the meaning of a statute authorizing a

dentist's license to be revoked where he has obtained money by false representations.

3. ——— *Statute Not Void for Indefiniteness.* In a statute authorizing the revocation of a dentist's license for specific offenses, the additional phrase "or for any other dishonorable conduct" is not void for indefiniteness.

4. ——— *Form of Complaint Sufficient.* The enforcement of the order of the board of dental examiners revoking the license of a dentist will not be enjoined for any informalities in the complaint made, or in the manner of conducting the investigation based thereon, where he is advised of the nature of the accusation against him, and given a fair opportunity to prepare and present his defense.

Appeal from Franklin district court. Opinion filed February 8, 1913. Reversed.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, and *Wilbur S. Jenks,* of Ottawa, for the appellants.

*W. R. Hazen,* and *H. Ward Page,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.:  W. S. Richardson is engaged in the practice of dentistry. A complaint was made to the state board of dental examiners charging in general terms that he had been guilty of obtaining money by false pretenses, and of dishonorable conduct, and specifying that, having performed services for a customer (a Mrs. Brack) under a promise that any needed repairs would be made without additional charge, he had refused, after having been paid in full, to make repairs that became necessary by reason of defective work. The board investigated the matter, took evidence, found against Richardson, and revoked his license. He brought an action to enjoin the board from enforcing its order and obtained a permanent injunction. The board appeals.

The trial court made a finding, among others, reading as follows:

"In view of the fact that no question is raised either at this trial, or upon the hearing before the Board, touching the moral character of the plaintiff, or his capability or workmanship touching any case except the one of Mrs. Brack, and in view of the further fact that each member of the Board testified that no other act of the plaintiff was taken into consideration except the one named in the charge against him, I believe that his license ought not to have been revoked, and that its revocation was a great injustice. There was in the hearing before the Board evidence proper for its consideration which, if believed in its entirety, would sustain its finding, yet the finding of the Board was against the clear and decided weight of the evidence. In the hearing and decision of the case, the Board acted honestly and impartially, and not arbitrarily, but I find that its act was oppressive."

We think this finding required a judgment against the plaintiff. The statute provides that the board may revoke the license of dentists "who have by false or fraudulent representations obtained or sought to obtain money or any other thing of value or have practiced under names other than their own, or for any other dishonorable conduct." (Gen. Stat. 1909, § 7991.) The investigation and determination whether a license should be revoked is committed to the board. Its decision upon a question of fact is final, if made in good faith, or as the same idea is sometimes expressed, "in the absence of fraud, corruption or oppression." (*Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247, 1 L. R. A., n. s., 811; *School District v. Davies,* 69 Kan. 162, 76 Pac. 409; *Allen v. Burrow,* 69 Kan. 812, 77 Pac. 555; *Munk v. Frink,* 81 Neb. 631, 116 N. W. 525, 17 L. R. A., n. s., 439.) The board's decision is rendered unassailable, so far as relates to its conduct, by the finding that it acted honestly and impartially, and not arbitrarily. True, the court added: "But I find that its act was oppressive." In the original finding, upon

which the judgment was rendered, these words followed, which were afterwards stricken out on the motion of the plaintiff: "that is, it was unduly severe, and an excessive use of the authority vested in the Board, and that the penalty imposed upon the plaintiff was grossly out of proportion to his offense." We do not think the dropping of the explanatory phrase materially changed the effect of the finding. The court believed the penalty to be too severe for the offense, and regarded this as sufficient to characterize the action of the board as oppressive. The striking out of the specific statement to this effect does not indicate a change of opinion. The term "oppressive" is essentially a conclusion. The finding that the board acted honestly and impartially, and not arbitrarily, is the controlling one, because the more specific. (*The State v. Kirmeyer*, ante, p. 592, 128 Pac. 1114.) As the board acted honestly and impartially, and not arbitrarily, its conduct could not have been oppressive in such sense as to authorize a court to set aside its order, unless because of a want of legal authority. An order of revocation lawfully made can not be set aside as oppressive on the ground that it seems to a court unduly severe. If the version of the transaction given by Mrs. Brack is correct (and the board is the tribunal to which the law commits the decision of this question) the plaintiff was guilty, in a sense at least, of obtaining money by false representations, and at all events of dishonorable conduct. The statute purports to authorize the revocation of a dentist's license for a single act of that character. Doubtless the legislature and the board proceeded upon the theory that a solitary instance of misconduct on the part of a dentist in connection with his profession might exhibit such a want of character as to amount to a disqualification to practice. The revocation of a license by reason of such misconduct is not regarded as a punishment for a past wrong, but as a protection to the public for the future. (*Meffert v.*

*Medical Board*, 66 Kan. 710, 72 Pac. 247, 1 L. R. A., n. s., 811.) It is the withdrawal of the permission without which the dentist may not practice.

It remains to consider whether the board lacked authority to make the order of revocation, for any of a number of reasons that are suggested. The statute requires the filing of written charges, supported by affidavit, as a basis for action by the board. The plaintiff contends that here the complaint was insufficient to give the board jurisdiction to act. It was informal and lacked much of the precision and definiteness of a well-drawn pleading, but we think it advised the plaintiff of the substance of the charge against him, and gave him all the information necessary to the preparation of his defense, and in a proceeding of this character nothing more is required. The specific contention is made that the conduct complained of did not constitute the obtaining of money by false pretenses, because, even accepting Mrs. Brack's story as true, Richardson made no false statement of an existing fact, but at the most only failed to keep his promise as to what he would do in the future. The authorities are agreed that a false pretense to be within the criminal statute must relate to an existing condition; but there is a line of cases holding that a promise made with a deliberate purpose not to perform it amounts to such a misrepresentation, because it falsely asserts an intention, the existence of which is a question of fact. (*National Bank v. Mackey*, 5 Kan. App. 437, 49 Pac. 324, 19 Cyc. 397; Note, 10 L. R. A., n. s., 640, 646.) In 14 A. & E. Encycl. of L. 51, it is said:

"Though there is a conflict of opinion on the question, the better opinion is, that the rule that an unperformed promise does not amount to fraud does not apply if the promise was made for the purpose of deceit, and with the intention at the time not to perform the same, but that there is fraud in such a case. The reason, it has been said, is that the promisor impliedly represents that he intends to perform his promise, and

Richardson v. Simpson.

therefore falsely represents the condition of his mind, which is a representation of fact."

Whatever should be the rule in a criminal prosecution, the making of a promise without any intention of performing it should be regarded as a false pretense within the meaning of the statute here involved.  Of course the mere failure of Richardson to keep a business agreement would not be a ground for revoking his license, but the evidence warranted the belief, upon which the board obviously proceeded, that he knew the work was defective when he collected pay for it, and that he had no intention of making the repairs.

The plaintiff contends that the portion of the statute warranting the revocation of a dentist's license for "dishonorable conduct" is unconstitutional and void, because the phrase quoted is too indefinite to be made the basis for such action.  Several courts have held in accordance with that contention, the argument being that a course regarded by one person as dishonorable may not seem so to another, and there is no fixed standard by which the disagreement can be settled. (*Hewitt v. Board of Medical Examiners*, 148 Cal. 590, 84 Pac. 39, 3 L. R. A., n. s., 896, 113 Am. St. Rep. 315, 7 A. & E. Ann. Cas. 750; *Czarra v. Board of Medical Supervisors*, 25 App. D. C. 443; *Mathews v. Murphy*, 23 Ky. Law Rep. 750, 63 S. W. 785, 54 L. R. A. 415.) Of the case last cited it is said in a note in 1 L. R. A., n. s., 813:

"The court, on the other hand, admits the validity of the statute as to the refusal to grant licenses, though such refusal may be based upon the same grounds. This seems inconsistent with its holding as to revocation, as there is no distinction between the two phases of the question.  On the whole, the decision seems to be against the spirit of the decisions above noted, and of the many cases upholding the validity of such a provision in connection with the granting of licenses."

44– 88 Kan.

Cases in which similar statutory provisions have been enforced (although in none of them does this precise question appear to have been directly raised) are collected in notes in 7 A. & E. Ann. Cas. 753, and 8 L. R. A., n. s., 585. See, also, *Morse v. Board of Medical Examiners,* 57 Tex. Civ. App. 93, 122 S. W. 447. We think it is going entirely too far to say that such a provision is a nullity. Before a license to practice dentistry is issued the applicant is required to furnish proof that he is "of good moral character." (Gen. Stat. 1909, § 7985.) The phrase is general, but no great practical difficulty attends its application. The courts which make a distinction between general language used in defining the conditions upon which one may be originally permitted to practice, and similar language used in stating the grounds upon which the permission may be withdrawn, proceed upon the theory, not accepted by this court, that the revocation of the license is essentially a punishment. The evil results, the fear of which has occasioned the decisions against the validity of provisions authorizing the revocation of a practitioner's license upon general grounds, can be avoided by reasonable interpretation. Doubtless no conduct should be deemed "dishonorable" in such sense as to warrant a forfeiture of a dentist's right to practice, unless it occurs in connection with the exercise of his profession and involves moral turpitude. The expression "other dishonorable conduct" may be interpreted to mean conduct of the same general character as that already specified. (*State, ex rel., v. Purl,* 228 Mo. 1, 128 S. W. 196.) Whether or not the conduct of Richardson as narrated by Mrs. Brack constitutes what might be technically described as obtaining money by false pretenses, it was dishonorable conduct of a similar kind.

An argument is made in support of the view that the evidence shows the decision of the board to have been arbitrary, fraudulent, and the result of a violent

prejudice.   We find nothing to impugn the good faith of any of the members of the board.   There was a direct conflict of testimony in the hearing before them. The quality of the work done by Richardson had a bearing upon the controversy.   This was a matter concerning which they were peculiarly qualified to reach a correct conclusion.   The procedure followed was not that of the courts, but we can not say that it was not adapted to the ascertainment of the truth, or that the plaintiff was denied any substantial right.

The judgment is reversed with directions to render judgment for the defendants.