No. 34,030

S. I. CAPLAND, *Appellee*, v. THE BOARD OF DENTAL EXAMINERS, *Appellant*.

No. 34,031

GORDON G. BROWN, *Appellee*, v. THE BOARD OF DENTAL EXAMINERS, *Appellant*.

(87 P. 2d 597)

Opinion filed March 4, 1939.

*Jay S. Parker,* attorney general, and *Eldon Wallingford,* assistant attorney general, for the appellant.

*George H. West, P. W. Croker,* both of Kansas City, and *Joe H. Burris,* of Kansas City, Mo., for the appellees.

*Wm. H. McCamish,* of Kansas City, as *amicus curiae.*

The opinion of the court was delivered by

WEDELL, J.: Separate actions were brought in the district court of Wyandotte county by S. I. Capland and G. G. Brown, licensed and practicing dentists in Kansas City, to enjoin the board of dental examiners of Kansas from enforcing its orders which revoked their respective licenses to practice dentistry in Kansas. The plaintiffs prevailed, and the defendant has appealed.

While the cases were not consolidated in the trial below, nor on appeal, they were argued together here, and we were informed by the parties that the issues to be determined were substantially the same. We shall therefore consider the cases together, and shall refer to the appellees, Capland and Brown, as the plaintiffs, and to the appellant, the board of dental examiners, as the board. Under stipulation of the parties the transcript of the proceedings in each case had before the board was submitted to the trial court as the evidence in the instant cases. The plaintiffs introduced the transcript and the board demurred to plaintiffs' evidence, and also moved for judgment on the pleadings and the evidence. Defendant's motion for a new trial, as well as the previous demurrer and motion, was overruled. From those rulings and from the judgment granting the injunction the board has appealed.

The complaints were signed by four practicing dentists in Wyandotte county, who were also officers in various dental societies. We shall first consider the Capland case, as the appeal in that case was first docketed in this court. The parties agree the proceedings were instituted under the statute which authorizes the board to revoke the license of a dentist, namely, G. S. 1935, 65-1407. The pertinent portion of that statute reads:

"The board may refuse to issue the license provided for in this act, or may revoke such license if issued to the individuals who have by false or fraudulent representations obtained or sought to obtain said license or money or any other

thing of value or have practiced under names other than their own, *or for any other dishonorable conduct."* (Italics inserted.)

It is conceded by the parties that neither of the plaintiffs were charged with the violation of the above statute unless the specific acts charged constituted dishonorable conduct. The substance of the general charge contained in the Capland complaint was:

"These complainants charge that one S. I. Capland is now and for many months last past, has been engaged in the practice of dentistry at No. 538 Minnesota avenue, in Kansas City, Kan., and is now and for many months last past has been conducting his said business in an unprofessional and unlawful manner and in a manner prohibited by law and contrary to public policy, and in such manner as to be inimical to the public and to bring the practice of the profession of dentistry into disrepute, and to destroy the confidence of the public in the profession."

The specific acts pleaded in support of the general charge were three in number. The first pertained to an advertisement printed and published in an advertising medium known as *The Shopper*. This medium is not a newspaper, but is printed in newspaper form and is distributed weekly, free of charge, to homes and places of business in Kansas City, Kan. The advertisement read:

"GOOD TEETH IMPROVE LOOKS—ALSO IMPROVE HEALTH

"I specialize in plates and bridgework. Moderate prices—terms can be arranged—complete X-ray service. Office hours 8:30 a. m. to 6 p. m. Wednesdays and Saturdays until 8 p. m. Sundays 9 to 12.

DR. CAPLAND, *Dentist*

"538 Minnesota Ave.                                                  Drexel 6678"

The second specific act charged pertained to an advertisement published in the Kansas City *Kansan*, a daily newspaper of general circulation in the city. It read:

"THERE'S A LAW AGAINST IT

"A state law passed several months ago prohibits dentists from advertising prices of dental work and mentioning their guarantees. But Doctor Capland continues to offer a complete dental service at moderate prices, easy terms. Plates, bridgework, X-ray service. Doctor Capland, Dentist. 538 Minnesota Ave. Drexel 6678. Office hours, 8:30 to 6. Wednesdays and Saturdays until 8 p. m. Sunday 9 to 12."

We are told this advertisement also contained a cut of an officer who was apparently signaling for a stop. The complaint further alleged:

"That all of said advertisements are what are known in the dental profession as 'come to me' advertisements; are for the purpose of attracting

attention to the respondent and are published for the purpose of direct solicitation of business; they are contrary to the statutes, law and public policy, and have a tendency to deceive the public."

The third specific act charged was as follows:

"That said S. I. Capland also advertises and solicits patronage now and for many months last past, by means of a street sign on the building where his office is located, and a glass case on the outside of the building on the sidewalk space, in which is contained specimens of dental work, false teeth, plates, etc., which is lighted by Neon light at night, and also underneath a painted sign announcing Doctor Capland and Dental Laboratories; which acts and conduct are in violation of the law and considered as dishonorable and unprofessional conduct by the public in general, and have a tendency to deceive and mislead the public."

Plaintiff Brown was charged with having similarly advertised in the Kansas City *Kansan*. He was also charged with a similar display in a glass case at the foot of the stairway of the building in which his office was located. Brown was also charged with displaying his name at the foot of the stairway and with displaying in large letters the words, "G. G. Brown, Dentist," on four of the risers on the stairway leading to his office. The complaint alleged the glass case and the sign on the risers could be seen from the sidewalk and were calculated to and did attract attention to him.

The licenses of both dentists were revoked on December 28, 1937. The legislature had previously enacted chapter 280 of the Laws of 1937, which became effective June 30. Section 2 of that act provides:

"It shall be unlawful for any person, firm or corporation engaged in the practice of dentistry to publish, directly or indirectly, or circulate any fraudulent, false, or misleading statements as to skill or method of practice of any person or operator in the practice of dentistry; or, in any way, to advertise to practice dentistry without causing pain; *or to advertise in any manner with a view of deceiving the public or in any way that will tend to deceive or defraud the public;* or to claim superiority over other dental practitioners; or to publish reports of cases or certificates of same in any advertising media; or to advertise as using any anesthetic, drug, formula, material, medicine, method or system, or to advertise free dental services or examination; or to advertise any amount as a price or fee for the service or services of any person engaged in the practice of dentistry, or for any material or materials whatsoever used or to be used; *or to employ 'cappers' or 'steerers' to obtain patronage or to exhibit or use specimens of dental work, posters, or any other media calling attention of the public to any person engaged in the practice of dentistry;* or to give a public demonstration of skill or methods of practicing dentistry at any place other than his office where he is known to be regularly engaged in the practice of his profession; and

every person committing an offense against any of the provisions of this section shall be guilty of a misdemeanor: *Provided,* That any licensed and registered dentist may display the name and title of the licensee on the premises where engaged in the profession, upon the windows thereof and by a door plate or name and title on office directly: *Provided,* That the name and title of the registrant shall not be displayed in lettering larger than six inches. [L. 1937, ch. 280, § 2; June 30.]" (G. S. 1937 Supp. 65-1417.) (Italics inserted.)

Section 3 of the same act in part provided:

"The board shall have the power to make such rules and regulations as are reasonably necessary to carry out and make effective the provisions and purpose of this act. The judgment or order of the board shall be in force until reversed or modified by the district court or an appellate court on appeal." (G. S. 1937 Supp. 65-1418.)

The record before us does not disclose that prior to the revocation of the licenses the board had promulgated any rules or regulations to carry out and make effective the provisions and purpose of the act.

Fred A. Richmond, called as a witness by complainants, testified in substance: He was a licensed dentist and was practicing in Kansas City, Kan. He had practiced dentistry for about seventeen years. He was one of the complainants who signed the complaint, and he signed it on behalf of the local dental society and as an individual. He had photographs made of the case containing the dental display. The photographs were ordered on behalf of the state dental society. He had made personal observation of the case "G-Y, Dental Laboratories." The cases were on the sidewalk and were lighted at times by a flashing Neon sign. In one of the pictures was shown a case enclosing specimens of dental work representing portions of the human anatomy. He had no knowledge of any dental laboratories conducted by Doctor Capland, and his personal reaction was that the words, "G-Y, Dental Laboratory," was a misnomer. This witness further testified:

"That the signs of the case under consideration are considered by the legal profession, the medical profession and the dental profession as being misleading."

The same witness testifying in the Brown case, in substance, said: In passing the location of Doctor Brown's office he observed the case containing specimens of dental work. It was at the bottom of the stairway, very close to the sidewalk, and was located just inside the line of the sidewalk. None of the signs at Doctor Brown's

office extended out into the street or beyond the premises occupied by him. At night his attention was directed to the case by the Neon sign over the doorway. He ordered the making of the photographs. The condition surrounding Doctor Brown's office had existed for a considerable length of time before the filing of the complaint.

The witness, Paul Peltzman, called by the complainants, testified to the making of the photographs of the glass cases containing the dental displays in each case. The photographs are not contained in the record before us.

The plaintiff admitted having procured the publication of the advertisements in *The Shopper* and in the Kansas City *Kansan* on the dates charged. The complainants offered no other testimony at that time.

The testimony of plaintiff Capland was in substance as follows: He maintained a dental office in Kansas City, Kan., and had been engaged in the practice of dentistry since 1917. He was a graduate of the Kansas City Dental College and had practiced in Kansas since 1922. After the 1937 act of the legislature he removed every sign from his building which was over six inches in height. After the 1937 law was passed he discontinued all advertising as to prices, guarantees, free examination or anything he thought was in violation of the law. He tried to live up to the new law. The advertisement in the Kansas City *Kansan* was prepared by its advertising salesman. He had directed it to be run once or twice. He also caused the advertisement to be run in *The Shopper*. The signs and cases were located on the premises occupied by him and none of the signs had letters larger than six inches. (It was admitted these cases had been displayed prior to the 1937 act.) After the complaint was filed he caused the cases to be removed and he also ceased advertising in papers and in all publications. He did not think he was violating the law when the advertisements appeared in the publications. He had never been cited by the Kansas State Board of Dental Examiners of this or any other state. He had never employed "cappers" or "steerers" for any purpose in connection with his practice.

On cross-examination he further testified in substance: The signs and show cases were on the premises occupied by him, but a portion of them might have extended out over the sidewalk. While he was in school he never attended any lectures on the question of advertising nor lectures on the subject of ethics. No dentist ever told him

it was dishonorable to advertise in the manner he was advertising. He had an idea of what the profession considered dishonorable and tried to live up to it. It was his idea the advertising set out in the complaint was honorable advertising.

The testimony of plaintiff Brown was in substance as follows: He had practiced dentistry in Kansas City, Kan., about thirteen years. He had been advised by Knowlton Parker, the advertising manager of the Kansas City *Kansan,* the newspaper advertisements were not in violation of law. He did not think he was violating the law when the advertisements were published. He had no desire to violate the law. If, however, notwithstanding the advice he had received, the board thought he was violating the law, he would make every attempt to comply with the law. He never had been charged with dishonorable conduct before and was considerably humiliated by this proceeding. He had made no attempt to join a dental association and was as ethical as any man present. He deemed it necessary to put up the picture of the dental plate with his photograph used in the newspaper advertisement. It was the only way he could get new business, not only for himself but for other dentists. He referred to reasonable prices in the advertisement because there were many poor people in Kansas City and they could have dental work done only by the means of payments. His reason for advertising was to interest anyone who needed dental services. He did not know that, in the opinion of honorable members of the dental profession, such advertising was not proper. He did not know such advertising was unethical. He had removed every sign and had quit advertising completely after objection was made thereto. He never had any objection made to his practice of dentistry and would continue such practice in an honorable manner. No one had ever called his attention to the fact that his advertising was considered wrong.

The testimony of Knowlton Parker, called as a witness by the plaintiffs, was in substance as follows: He was the advertising manager for the Kansas City *Kansan* and had been engaged in that profession for over fifteen years. He was acquainted with Doctors Brown and Capland. He knew of the passage of the 1937 act. After the enactment of that act he consulted the law firm of McAnany, Alden and Van Cleave, the attorneys for the newspaper, concerning the advertisements in question, and had been advised they did not violate the act. He also, together with a member of that firm, consulted the attorney general's office concerning the same and received

the same advice. The attorney general's office, however, did advise him the advertising might be considered by the state dental society as a violation of its code of ethics. He also expressly inquired of the attorney general's office concerning the portion of the statute which pertained to the employment of "cappers" and "steerers" and was informed the office had written a letter to Doctor Burkett, state president of the board at that time, on that particular subject and that he obtained a copy of the letter from the attorney general's office. (On the hearing the copy of the letter was identified by its author and the author advised the board such letter expressed not only his past but his present opinion on the subject.) The letter to Doctor Burkett reads:

"Under date of May 1 you made several inquiries with reference to the construction and application of House bill 495, which is an act relating to dentists and dental hygienists, and I have replied to your inquiries in the order presented by your letter. Your first inquiry is in reference to the proper construction of that part of section 2 which reads as follows: 'Or to employ "cappers" or "steerers" to obtain patronage, or to exhibit or use specimens of dental work, posters or other media calling attention of the public to any person engaged in the practice of dentistry.' It is my opinion that this whole phrase deals with unlawful acts by 'cappers' or 'steerers' and that it is unlawful for a dentist to employ 'cappers' to use specimens of dentistry or to employ 'cappers' to use posters or other media."

The witness Parker further testified in substance: In order to obtain the views of the board he wrote Dr. Gordon L. Teall, the new president of that board, on June 1, 1937. That letter and the answer thereto reads:

"DEAR DOCTOR TEALL: I have just returned from an interview with the assistant attorney general, Varner, at Topeka, on the law recently passed by the state legislature on dental advertising.

"We have in Kansas City, Kansas, two local dentists who wish to advertise but wish to make their copy conform to the laws and regulations.

"In talking with Mr. Varner, I gather that, in his opinion, a dentist could advertise covering the following points:

"1. Health benefits good teeth.

"2. Personal appearance aided by good teeth.

"3. Moderate prices.

"4. Use a picture of teeth in his copy.

"5. Use his own picture in his copy.

"6. Office number, telephone, address, and so on.

"That they cannot use the following:

"1. Any kind of misleading advertising.

"2. Advertise painless dentistry.

"3. Claim superiority over other dental practitioners.

"4. Use testimonials or reports of cases.

"5. Advertise free dental services or examination.

"6. Advertise the use of an anesthetic, drug, formula, materials, medicine or system.

"7. Advertise any price.

"I am enclosing a sample piece of copy and I am wondering if you would be so kind as to give me your opinion as to its acceptability to the code of ethics of the dental association?

"I have talked to Dr. Fred Richmond of this city and gathered from his conversation that the only thing that the dental association was interested in was 'cleaning up' the copy of some dentists in the state who misrepresented, used extravagant statements and got people into their office by advertising a price that was not always correct.

"These dentists in our city wish to know what the attitude of your board will be upon the type of copy I suggested above.

"I will personally appreciate your statement in this regard, as will the other newspapers in the state of Kansas whose advertisers are affected by this new law.                                     Yours very truly,      ADVERTISING MANAGER."

"DEAR MR. PARKER: Your interesting letter relative to the advertising of the dentists under the new law recently passed was received yesterday.

"Our state dental board met with Mr. Varner a few weeks ago to get his interpretation of this new law. And some of the opinions were copied down and turned over to our secretary, who was Dr. G. E. Burkett, of Kingman. Since that time we have a new board with the exception of me, and our first meeting will really be next Monday, at which time we begin our examinations. During this three- or four-day session we will take up the subject of your letter, together with Mr. Varner's opinions that he has already given the board. We will write to you as soon as we have discussed them.

"In behalf of the board, I can truly say we appreciate your letter of inquiry and desire to coöperate. I can assure you, as Dr. Fred Richmond, who is secretary of our state dental association, has expressed himself, that we are interested in cleaning up the profession and desire to have the highest type of ethical men possible. Also, quoting from the code of ethics, 'in order that the dignity and honor of the dental profession may be upheld, its standards exalted, its sphere of usefulness extended, and the advancement of dental science promoted, and that the members of the American Dental Association may understand more clearly their duties and obligations to the dental profession, to their patients and to the community at large, the following code of ethics is prescribed':

"There is being started a very important program through a bureau or committee in Chicago, which the dentists are anxious to get started in the various states. And that is dental education for the public through the newspaper, and we are very anxious to have your coöperation in such a movement which we believe and hope will discourage personal advertising. We believe it will be more elevating and remunerative, both for the press and for the dental profession, and we will have done something for the betterment of humanity.

"Again thanking you for your inquiry and trusting that next week will be soon enough to answer it more definitely, I am

Sincerely yours,      (Signed)   GORDON L. TEALL."

The dental code of ethics was not made a part of the record and we are not advised whether it covers the subject of advertising.

The witness Parker further testified in substance: He conveyed the information obtained through the conferences and letters to the plaintiffs. He prepared the advertisements for his paper, and in preparing the same he tried to comply with the legal advice received upon the subject.

In the Brown case Dr. Hugh G. Tanzey was called as a witness by plaintiff Brown. That witness testified in substance: He had been a dentist for thirty-seven years. During the last twenty-seven years he had limited his practice to orthodontia. He had known Doctor Brown for about forty years and knew something about the life and type of man he was. He had never known Doctor Brown to betray the confidence of a friend. He had never imposed upon him in any particular.

At this point in the proceedings Doctor Gants, one of the members of the board, participated in the examination of the witness, and the record discloses the following:

"Doctor Gants: We are not interested in that. We are dealing with his professional conduct. (That witness was not familiar with the professional conduct of the respondent in recent years.)

"Doctor Gants: Doctor Tanzey, do you think that this doctor lived up to our code of ethics by his type of practice that is apparent from the evidence produced here so far, do you really think so? A. I might say that the code of ethics is changing pretty rapidly and with the more recent light on dental progress in an educational way and in a professional way. I would assume that Doctor Brown has—he is using a method that is a little bit obsolete. I would not call it desirable, I would say untactful, and it will be discarded entirely and in the natural course of evolution it may come back in.

"Doctor Gants: And you think it should be discarded? A. Oh, I do not use it myself.

"Doctor Gants: That is what I was trying to get at. A. In fact, I think it is rather indiscreet; rather untactful."

After the parties had rested the Capland case was reopened, and Dr. Ralph W. Edwards was called by the complainants, and testified in substance: He was a dentist and is teaching in the Kansas City Western Dental College. The college had existed since 1881 under various names. He was acquainted with Doctor Capland by reputation and Doctor Capland had been a student in that college prior to the time that he (Doctor Edwards) had been a student at the college. That college teaches a course on ethics. Doctor Patterson had taught in the college from its beginning. He knew

Doctor Patterson personally, and Doctor Patterson had told him concerning the ethics he had taught to the students. Doctor Patterson told him that he had always taught his students that advertising was objectionable. Advertising in that college is looked upon as unethical. It is looked upon as coercing the public. A person who advertises is looked upon as not being a fit person to render good service to the public because of the attempts he makes to get people into his office under false pretenses.

The licenses were revoked by the board on December 28, 1937, and plaintiffs were forbidden to practice dentistry thereafter except that they were allowed until January 15, 1938, within which to complete unfinished work and to close their business. As grounds for revoking the licenses the board in substance found: Plaintiffs admitted they had advertisements published as charged in the complaints, and admitted they had exhibited displays of dental work in a glass case on the outside of the buildings in which their offices were located. The plaintiffs advertised for the purpose of attracting attention to themselves as practicing dentists and to obtaining patronage. Their acts and conduct were in violation of section 2, chapter 280 of the Laws of 1937, and they were therefore guilty of practicing dentistry in an unlawful manner and contrary to the laws of the state of Kansas.

The respective petitions for injunction, in addition to other grounds, in substance alleged: The board was without jurisdiction to try the plaintiffs for a violation of a penal statute. Plaintiffs were denied the right of a trial by jury guaranteed to them by the state and federal constitutions. They did not violate the provisions of section 2, chapter 280 of the Laws of 1937. The advertising, after the enactment of the 1937 act, was done in good faith and only after they had sought and obtained the advice and opinion of duly licensed attorneys at law that such advertising was not in violation of the 1937 act. There was no evidence of dishonorable conduct, and the board did not find them guilty of dishonorable conduct. The board had no authority to revoke their licenses except for dishonorable conduct, and the orders revoking the licenses were void and should not be enforced. The orders were made without authority of law in a capricious, prejudicial and oppressive manner, and would deprive plaintiffs of a valuable property right without due process of law. The acts of the board were unlawful, arbitrary, prejudicial and oppressive, and that plaintiff had no plain, adequate or complete remedy at law.

The pertinent portion of the journal entry of judgment, in each case, in addition to the granting of the injunction, reads:

"Neither the plaintiff nor defendants requested special findings of fact or conclusions of law, for which reason none are given.

"Thereupon, the issues were submitted to the court upon the pleadings, statements of counsel, the evidence and arguments of counsel, and the court, being well and fully advised in the premises, does find that the plaintiff is entitled to the relief prayed for in his petition, and further finds that plaintiff has no plain, adequate and complete remedy at law in the premises and save for the order hereinafter made would suffer irreparable injury and damage."

At the outset of this appeal we are confronted with divergent theories of the parties seeking a reversal of the injunction. The attorney general is the legal representative of the board of dental examiners. By reason of certain differences of opinion between the attorney general and the Hon. Wm. H. McCamish, who represented the complainants at the hearing before the board, regarding the proper interpretation of, and the effect to be given to, section 2, chapter 280 of the Laws of 1937, the latter has filed a brief as *amicus curiae.* We are pleased to have the benefit of his brief. The various questions upon which counsel differ are not free from difficulty. Both briefs have been studied with care and both briefs have been helpful to the court. The fact, however, that such differences of view exist among lawyers of ability and experience places a rather heavy burden upon the dentists whose licenses were revoked upon the theory their advertisements constituted a violation of the statute in question. Under the circumstances of this case and the conclusions reached we do not, however, regard the question as to which of their respective views may be correct as the controlling factor in the instant case. We must and we do assume the legislature intended by the 1937 act to enact legislation which, in its opinion, would protect or tend to protect and promote the public health, welfare, morals and high standards of the dental profession. It obviously determined that certain restrictions and limitations of advertising by dentists themselves or through "cappers" and "steerers" would advance that general purpose. The exact extent, however, to which lawmakers may, within constitutional bounds, limit, restrict or prohibit the advertising of a dental practice is not a subject now before us. That question was not presented to or ruled upon by the trial court, and hence is not a matter of present concern. Nor is it necessary to a decision in the instant case that we decide the equally interesting contention of plaintiffs that the board

is without jurisdiction to try them for the violation of a distinctly criminal section of the 1937 act.

The real question before the board was whether the licenses should be revoked by reason of dishonorable conduct. (G. S. 1935, 65-1407.) The real question before this court is whether the orders revoking the licenses were unreasonable, arbitrary or oppressive under the facts and circumstances of these particular cases. All other questions are secondary and not essential to a determination of the validity of the injunction. The 1937 act had not been judicially interpreted in this state. After its passage plaintiffs did not continue to advertise without regard to the new law. They first obtained the benefit of legal advice upon the subject. The newspaper which was contemplating the publication of the advertisement sought and obtained the opinions of lawyers possessed of good moral character, ability and experience. The opinion of the highest law enforcement officer of the state was likewise sought and obtained. The opinion of this same official previously had been sought and obtained by the dental board itself on features of the new act involved in the instant case. The latter opinion dealt especially with the provision in the new act concerning "cappers" and "steerers." The president of the dental board was also consulted by the advertising manager of the newspaper before that newspaper published the advertisements. The board was expressly advised two dentists in Kansas City wished to know the attitude of the board upon the subject of such advertisements. Copies of the proposed advertisements were included in the letter to the president of the board. The board did not advise that in its opinion the contemplated advertisements violated either the letter or the spirit of the 1937 act. The board did not advise the advertisements were contrary to the letter or the spirit of the code of ethics of any dental society. The only answer the plaintiffs ever received was the official charge filed against them to revoke their licenses. Plaintiffs discontinued all advertising and case displays. The plaintiff, Brown, informed the board that, notwithstanding the legal advice he had received, he would make every effort to comply with the law if the board regarded the advertisements as unlawful or undesirable. He also removed every sign and ceased advertising completely when the complaint was filed. The plaintiff, Capland, did likewise. That was the first objection ever registered against the advertising practices of either of the plaintiffs. When they ceased such advertising, in an effort to comply with the

personal views of the members of the board, it was no longer necessary to revoke their licenses in order to protect the public against what the board conceived to constitute infraction of a criminal law.

On behalf of the board it is further urged there was evidence the signs and dental displays contained in the cases were misleading and deceiving. Their use, however, had also been discontinued. The board made some specific findings concerning the signs and cases, but it made no specific finding they were misleading or deceiving or that they had a tendency to mislead or deceive. If the board actually concluded they were misleading or deceiving such conclusion can be assumed only by reason of the general finding that the acts and conduct of plaintiff constituted a violation of section 2, chapter 280 of the 1937 act. Assuming, however, the board intended to include such a conclusion under the general finding, we are still confronted with the fundamental question of whether such acts constituted dishonorable conduct under all the circumstances in this particular case. The board nowhere made a specific finding plaintiffs were guilty of dishonorable conduct. Counsel for complainants at the hearing before the board advised the board and opposing counsel and the attorney general that he was not concerned with plaintiffs' intent or dishonorable conduct generally, but was concerned solely with the question of whether the provisions of section 2, chapter 280 of the 1937 act had been violated. In his brief in this court he takes the position that no advertising of any kind or character is now allowed except that expressly permitted under the proviso portion of section 2, and that any other advertising constitutes such dishonorable conduct as will justify revocation of a dentist's license. From the findings it would appear the board probably considered, also, the first portion of section 2, which expressly prohibits advertisements of certain character. Whatever the exact theory of the board may have been as to its interpretation of the 1937 act, it is apparent the board proceeded upon the theory that any act which, in its opinion, violated the provisions of section 2 of the act was unlawful and therefore ground for the revocation of a license, irrespective of any and all extenuating circumstances. In that respect we think the action of the board was unreasonable and resulted in an arbitrary and oppressive judgment.

Assuming for the moment the board was correct in its opinion as to the proper interpretation of the law, and that the legal advice relied upon by plaintiffs was erroneous, does it necessarily follow the

plaintiffs were guilty of dishonorable conduct? We do not think so. The new law had received no judicial interpretation in this state. Prior to the complaints the attitude of the board relative to the publications was sought. It also had received an opinion of the attorney general on that subject. It would now appear that opinion apparently did not coincide with its views. And in fairness to the board we will assume it obtained contrary legal advice, although the record does not disclose it had such advice at that time. It, however, did not make its position known later when its position was expressly sought on behalf of the plaintiffs. Its position did not become known until the complaints were lodged. When its position did become known plaintiffs agreed to abide by its wishes, irrespective of what their legal rights on the subject might be. They discontinued advertising of every kind and character. Of course, we do not mean to intimate that mere discontinuance of objectionable advertising in and of itself after the filing of a complaint would necessarily constitute a defense under all circumstances. That, indeed, would be an easy method of escape from the proper consequences of intentional wrongdoing or dishonorable conduct. In consideration, however, of all other circumstances involved and previously narrated, we think the willingness of plaintiffs to discontinue any and all advertisements which appeared objectionable or distasteful to the board, coupled with their actual discontinuance of all conduct complained of, renders the orders of revocation unreasonable, arbitrary and oppressive.

We are reminded the board was not arbitrary in the matter of the admission of evidence, but, on the contrary, was indeed lenient in that respect. The record discloses that to be true. In that respect the board is to be commended. It did exactly what administrative bodies not versed in rules of evidence are required to do. (*Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247; *Brown v. Hassig,* 136 Kan. 384, 387, 15 P. 2d 401.) The purpose of such hearings is to discover the truth and not to conceal it by the application of technical rules of evidence with which the ordinary administrative body is not familiar. In the instant case it is not the procedure during the hearing that is complained of, but the conclusion reached thereafter.

It is further urged the board is an administrative agency, and as such its findings are conclusive and not open to review or interference by the courts except where fraudulent, arbitrary or in excess of its authority. (*Meffert v. Medical Board,* supra; *Richardson v.*

*Simpson,* 88 Kan. 684, 129 Pac. 1128; *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154:) That such is the established rule need not be argued. The rule has been generally applied under numerous circumstances and to the actions of all administrative bodies. (See *Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1, and cases therein cited.)

We are further reminded courts are not permitted to substitute their judgment for that of administrative tribunals. There can be no quarrel concerning the correctness of that principle. (*Kansas Gas & Electric Co. v. Public Service Comm.,* 122 Kan. 462, 251 Pac. 1097; *Union Pac. Rld. Co. v. State Tax Comm.,* supra, p. 726.) While courts will not be permitted to substitute their judgment for that of administrative bodies, they are nevertheless definitely charged with the solemn duty of determining whether the procedure employed in reaching that judgment, or whether the judgment itself as rendered, is unreasonable, arbitrary or oppressive, under the circumstances of each particular case. An administrative body cannot be the final judge of the reasonableness of its own orders. (*Drainage District v. Railway Co.,* 99 Kan. 188, 161 Pac. 937; *Cities Service Gas Co. v. Riverside Drainage Dist.,* 137 Kan. 410, 414, 20 P. 2d 520.)

It is further contended an administrative body has wide discretion in determining its judgments. That must inevitably be true by reason of the very nature of its functions. The discretion, however, cannot be abused. Discretion must actually be exercised, and that means it must be reasonably exercised in view of all and not merely some of the circumstances involved. (*Drainage District v. Railway Co.,* supra; *Cities Service Gas Co. v. Riverside Drainage District,* supra; *Miller v. State Board of Embalming,* 110 Kan. 135, 140, 202 Pac. 619; *Johnson v. Reno County Comm'rs,* 147 Kan. 211, 220, 75 P. 2d 849, and cases therein cited.) Moreover, it does not follow that a person affected by the orders or judgments of an administrative body is stripped of all redress for relief where there has not been a reasonable exercise of discretion. (*Allen v. Burrow,* 69 Kan. 812, 77 Pac. 555; *Johnson v. Reno County Comm'rs,* supra.) In the Allen case it was said:

"Even arbitrary and capricious conduct, amounting to an abuse of discretion, will justify mandamus to compel a proper performance of duty, upon the theory that there has been, in fact, no real exercise of judgment." (p. 821.)

It is urged the decision of the board should be sustained, irrespective of the 1937 act. We are reminded there was evidence advertising

had been taught to be unethical in the dental school which plaintiff Capland attended, and that advertising was regarded as unethical by the profession. The contention is advertising, therefore, constituted dishonorable conduct. Undoubtedly many wholesome philosophies and doctrines are taught in professional schools which professional societies are eager to adopt, but which they have not yet been able to persuade its members to adopt as a part of its code of ethics. If the state dental society has adopted a code of ethics which prohibits or frowns upon the nature or character of the advertising employed in the instant case, or upon any other kind of advertising, the record is silent in that respect. The result is we do not have before us the question of whether the violation of a professional code of ethics constitutes dishonorable conduct.

Abstract dissertations on the subject of what constitutes dishonorable conduct are interesting but not always helpful. The decision in each case must rest upon its own peculiar facts. The term "dishonorable" must be construed as having been used by the legislature in its generally accepted sense. Webster's New International Dictionary, first ed., defines it as follows:

"Wanting in honor; not honorable; bringing or deserving dishonor; staining the character, and lessening the reputation; shameful; disgraceful; base."

Soule's Dictionary of English Synonyms, Revised and Enlarged by Alfred D. Sheffield (1938), defines the word thus:

"Dishonorable. 1. Disreputable, discreditable, disgraceful, shameful, scandalous, infamous, ignominious.

"2. Base, devoid of honor, shameless, false, false-hearted."

See, also, *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247; *Richardson v. Simpson*, 88 Kan. 684, 690, 129 Pac. 1128; *Winslow v. Board of Dental Examiners*, 115 Kan. 450, 223 Pac. 308; *Crabb v. Board of Dental Examiners*, 118 Kan. 513, 235 Pac. 829.

The board made certain specific findings, but it did not find plaintiffs were guilty of dishonorable conduct. Under the circumstances in this case, we think, if such a finding was intended it cannot be sustained. It may be the theory of the board was the same as that of counsel for complainants, namely, that a violation of section 2 constituted an unlawful act, and that the unlawful act constituted dishonorable conduct. We have previously treated that aspect of the case, as applied to the particular circumstances in the instant case, and it need not be repeated here.

It is also well to note that section 3, chapter 280 of the Laws of 1937, expressly authorizes the board to make such rules and regulations as are reasonably necessary to carry out and make effective the provisions and purpose of the act, but that plaintiffs were not charged with violating any rules or regulations promulgated by the board.

The plaintiff Brown takes exception to the finding of the board that his case containing dental displays was admitted by him to have been located outside of the building in which his office was located. We do not find such admission nor other evidence it was located outside of the building.

Various questions are raised on appeal which it is not clear the trial court decided, and we prefer to pass upon them when it more clearly appears they form the basis of the judgment rendered. The parties easily could have raised them by asking for specific findings of fact and conclusions of law had they desired to do so, but that was not done. We therefore prefer to answer only the specific question of whether the record discloses dishonorable conduct under the facts of this particular case. That question definitely inheres in the order granting the injunction.

Under all the circumstances in the instant case we are forced to conclude the injunction was properly granted. The judgment is affirmed.