No. 46,748

Michael A. Morra, *Appellant,* v. State Board of Examiners of Psychologists, *Appellee.*

(510 P. 2d 614)

Opinion filed May 12, 1973.

*William H. Dye*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and was on the brief for the appellant.

*John C. Johnson*, assistant attorney general, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: In 1967 the Kansas legislature enacted the certification of psychologists act which now appears on the statute books as K. S. A. 74-5301, *et seq.* This will be referred to hereafter as the act. This act contained for the first time provisions for the certification and registration of qualified psychologists practicing in this state; for the creation of a state board of examiners of psychologists consisting of seven certified psychologists to be appointed by the governor; for the examination by said board of such applicants as request certification (with certain exceptions); and for the revocation or suspension of certificates by the board of examiners after a hearing held in accordance with procedures set out in the act. The present appeal brings the act before this court for the first time.

The record discloses that on April 21, 1971, the attorney general filed an amended petition against Michael A. Morra, a psychologist who had previously been certified by the state board of examiners. This pleading asked that the board revoke or suspend Dr. Morra's right and authority to practice psychology in the state of Kansas. The petition was predicated on the alleged violation of the provisions of K. S. A. 1970 Supp. 74-5324 (*d*) and (*e*). These subsections provide as follows:

"The certificate of any psychologist may be suspended or revoked by the board upon proof that the psychologist: . . . (*d*) has been guilty of unprofessional conduct as defined by rules established by the board; or (*e*) has been guilty of negligence or wrongful actions in the performance of his duties."

The specific violations charged against the doctor pertained to sexual improprieties said to have been addressed by him to two of his women patients. The misconduct was alleged to have occurred during the last part of 1969 and the early months of 1970. We shall hereafter refer to the state board of examiners of

psychologists as the board and to Dr. Morra either by name or as the respondent.

Following an all-day hearing on July 27, 1971, which continued late into the night, the board found Dr. Morra guilty of negligent and wrongful actions, and guilty of behavior in violation of the code of ethics of the American Psychological Association. Its order of revocation is dated September 17, 1971, on which date the board notified Dr. Morra that his license was revoked. A clarifying order of revocation was sent to Dr. Morra on September 29, and on October 14 the board filed extensive findings of fact and five conclusions of law.

The respondent appealed from the order of the board to the district court of Sedgwick County, Kansas, where the appeal was heard. On March 20, 1972, the district court affirmed the orders of the board and entered the following findings:

"1. That the appellant was properly summoned before the Board which was duly constituted having jurisdiction over the parties and the proceedings.

"2. That at the hearing appellant was given the opportunity to offer evidence and confront and cross-examine witnesses, and to have counsel present.

"3. That at the completion of the hearing appellant gave timely notice of this appeal and the matter is properly before this court.

"4. That there is competent substantial evidence in the transcript to support the basic findings and orders of the Board.

"5. That the orders of the Board are within the scope of its authority pursuant to the Certification of Psychologists Act, K. S. A. 74-5301 et seq.

"6. That findings of fact and conclusions of law were issued by the Board in sufficient time to aid appellant in perfecting this appeal and in appraising [sic] this court of the underlying facts and conclusions of law upon which the Board's orders were based.

"7. That the Certification of Psychologists Act as applied to the appellant is constitutional in that it affords a due process hearing with notice and an opportunity to be heard.

"8. That the transcript does not disclose conduct which as a matter of law would establish bias and prejudice on the part of the Board members during the course of the proceedings. In the exercise of the Board's discretion it cannot be found as a matter of law that the Board acted in an arbitrary unreasonable or capricious manner.

"9. That the Board conducted the hearing in a fair and impartial manner within the scope of its authority and in substantial compliance with the provisions of the Certification of Psychologists Act."

Dr. Morra has appealed from the judgment and findings of the district court.

Before proceeding to discuss the several points raised by the appellant it would seem appropriate to restate quite briefly the limited

scope of judicial review with respect to an administrative action. We have consistently said that under the separation of powers principle a district court may not, on appeal, substitute its judgment for that of the administrative tribunal, but the judicial function is strictly limited to the determination of three legal questions: (1) Was there substantial evidence to provide a reasonable basis for the conclusion reached by the administrative body? (2) Was the action taken by the administrative board unreasonable, arbitrary, fraudulent or oppressive? (3) Was the action taken within the authority, or competence, of the administrative agency? (*Richardson v. Simpson*, 88 Kan. 684, 129 Pac. 1128; *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154; *Capland v. Board of Dental Examiners*, 149 Kan. 352, 87 P. 2d 597; *Timmons, Administrator v. McGaughey*, 193 Kan. 171, 392 P. 2d 835; *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P. 2d 828; *Rydd v. State Board of Health*, 202 Kan. 721, 451 P. 2d 239; *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 510 P. 2d 132.) We said also, in the *Foote* case that "in reviewing the district court's judgment this court will in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." (p. 451.)

With these observations out of the way, we turn to the issues to be decided. Dr. Morra first contends that the order of the board was not supported by substantial evidence. We believe the record shows otherwise. It discloses that both of the female patients against whom the doctor's improper advances were directed appeared in person and testified at the hearing and that they were cross-examined by respondent's counsel. Their testimony supported the allegations set forth in the amended petition. Each witness went into detail concerning the sexual peccadillos of Dr. Morra.

In its findings, the board set out at some length the testimony given by the two women, who had not previously known each other, and found it to be lucid, clear, unambiguous and containing no contradictions. In its conclusions of law the board characterized Dr. Morra's actions as being negligent and wrongful; that he wrongfully ignored a basic duty of a responsible psychologist, *i. e.*, to avoid sexual intimacies with his patients; and that he neglected to consider the well-being of his patients.

Substantial evidence has been defined as that which possesses

relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. (*Jibben v. Post & Brown Well Service,* 199 Kan. 793, 795, 433 P. 2d 467; *Kansas State Board of Healing Arts v. Foote,* supra.) The evidence supporting the board's conclusions in this case may be likewise characterized.

Although Dr. Morra categorically denied the accusations of his former patients, it was the function of the board to judge the credibility of the witnesses, to weigh and evaluate their testimony and to resolve any conflicts. The findings reflect this function was performed.

Not only did the board conclude that respondent was guilty of negligent and wrongful actions in performing his duties but it further determined that his behavior violated the code of ethics of the American Psychological Association. The respondent complains this code of ethics had not been incorporated into the rules of the board until some weeks after the hearing was held and that there could be no substantial evidence to support a violation of a rule yet to be promulgated. K. S. A. 74-5308 (*a*) provides that the board shall adopt the code of ethics of the American Psychological Association. The state asserts in its brief that the board did adopt the A. P. A. code at a regularly scheduled meeting in 1968, but that through some misunderstanding it was not promulgated as one of its rules until shortly after Dr. Morra's hearing. Be that as it may, the rule did not become effective until January 1, 1972. (See K. A. R. 72-12-1 to 72-12-19.)

We need not determine what effect, if any, this hiatus may have had with respect to the validity or legal effectiveness of the board's conclusion that the respondent's conduct violated the code of ethics. The state had charged not only that Dr. Morra had been guilty of unprofessional conduct as defined by rules established by the board (K. S. A. 74-5324 [*d*]) but alleged also that he had been guilty of negligence and wrongful actions in the performance of his duties. (K. S. A. 74-5324 [*e*].) The evidence appears amply sufficient to support the latter charge, which alone would justify the board in revoking the respondent's license.

Was the action taken by the board arbitrary, capricious, unlawful or unreasonable? A number of incidents and alleged irregularities are said to require an affirmative response.

Dr. Morra complains of erroneous rulings made during the hearing on the admission and rejection of evidence, the examination of

witnesses, etc. K. S. A. 74-5333 specifically provides the board shall not be bound by technical rules of procedure, but shall give all parties reasonable opportunity to be heard and to present evidence. The statute further recites that depositions may be received in the discretion of the board. Our case law lends support to the rationale of the statute. In *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247, the plaintiff contended his rights were violated by the admission of evidence largely made up of unsupported accusations, hearsay and street rumors. In replying to this contention, the court stated:

". . . The provisions of the act creating the board plainly indicate that such investigation was not intended to be carried on in observance of the technical rules adopted by courts of law. The act provides that the board shall be composed of seven physicians. These men are not learned in the science of law, and to require of a board thus composed that its investigations be conducted in conformity to the technical rules of a common-law court would at once disqualify it from making any investigation. . . ." (pp. 715, 716.)

The principle enunciated in *Meffert* has frequently been followed in workmen's compensation cases. In *Holt v. Peterson Construction Co.*, 134 Kan. 149, 4 P. 2d 428, it was said:

"Much liberality is allowed in the taking of testimony in boards, commissions, committees and other organizations acting for the public, such as public service commission, county commissioners and boards of equalization. . . ." (p. 151.)

In *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276, we said:

". . . [I]f the commissioner's decision be based on substantial and satisfactory evidence, relevant, reasonable, and persuasive, though not technically admissible under the rules of evidence governing procedure, the decision will be upheld. . . ." (pp. 380, 381.)

See, also, *Dean v. Hodges Bros.*, 170 Kan. 333, 224 P. 2d 1028.

In attacking the board's action as being arbitrary Dr. Morra complains that the board acted as investigator, grand jury, prosecutor, judge and jury. He asserts that after one of the board's members took *ex parte* statements from the two women patients, he "could no longer be heard by an unprejudiced and unbiased board" and he suggests the board should not have proceeded on unsworn statements without giving him notice. The record shows that before the amended petition was filed the board met to decide on its course of action respecting complaints against Dr. Morra, and it then determined proceedings should be instituted. In adopting this course the board followed the provisions of K. S. A.

74-5327, which empowers the board to direct the attorney general, the county attorney, or its own attorney, to file a petition on its own motion. We believe no prejudice may be presumed from the board's prehearing investigation or its directing that a petition be prepared. In *Board of County Commissioners v. Brookover*, 198 Kan. 70, 422 P. 2d 906, we held:

"A predetermination of an issue is not indicated because an administrative board makes an informal preliminary investigation before calling a formal hearing." (Syl. ¶ 9.)

It is further contended that bias was indicated when the board refused to stay execution of its judgment pending appeal to district court. The respondent loses sight of K. S. A. 74-5338 which provides that where the defendant appeals, the only bond required shall be for the payment of costs before both the board and the district court, but that the bond shall not stay the board's order or restore the defendant's right to practice pending appeal.

Hostility on the part of the board is also said to be shown in requiring the hearing to be concluded in one day; in limiting the time for opening and closing statements; in describing the doctor's guilt as being "beyond a reasonable doubt"; in filing its findings of fact subsequent to its order of revocation; and in the manner of phrasing its clarifying order of revocation. We do not regard the substance of these claims as manifesting bad faith or personal bias on the part of board members.

It may be conceded that the hearing was not conducted with the finesse and legal expertise which one would hope to find in a judicial proceeding. A good deal of dialogue, some of it argumentative, took place between counsel and members of the board. Not every ruling made by the board would pass muster in a court of law bound by technical rules. We recognize, however, that this was a comparatively new board, that its members were lacking in experience and were, moreover, psychologists—not lawyers. Overall, we cannot say that fraud, bad faith or prejudice tainted the proceedings.

In arguing that the board exceeded the scope of its authority, the respondent makes three complaints: that the board did not require the women to verify their written statements before the present action was filed; that the board found him guilty of violating the ethical standards of the American Psychological Association before the same had been incorporated into its rules; and

that the board applied two different quantums of proof, *i. e.*, guilt beyond a reasonable doubt and clear and convincing proof of guilt. We shall not engage in any lengthy disquisition concerning these points. The first two have already been discussed, while the latter appears to have little relevance. The board found as a conclusion of law that the state's evidence was clear and convincing, thus satisfying a high quantum of proof.

We deem it sufficient to say with respect to the subject of jurisdiction that the final action taken by the board, *i. e.*, revocation of Dr. Morra's license to practice psychology, is expressly authorized by provisions of the act and was well within its competency; that its judgment was based on substantial evidence received at a hearing which the doctor attended and in which he participated; that Dr. Morra was confronted by the essential witnesses against him; that he both testified himself and presented other evidence in his own behalf, including several affidavits and extensive testimony by a Wichita psychiatrist, who unburdened himself of the opinion that the testimony of neither of the two women witnesses could be considered reliable.

The respondent questions the constitutionality of the certification of psychologists act. In a general way it may be said that any legislative act coming before us is presumed to be constitutional and this presumption prevails until the act under review clearly appears to violate some constitutional provision. (*Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P. 2d 877, and cases cited therein.) This is true of statutes creating administrative agencies and defining their powers. (1 Am. Jur. 2d, Administrative Law, § 30, p. 833.)

While this court has had no occasion to pass on the validity of this specific act, it has in a prior case (*Bohl v. Teall*, 157 Kan. 239, 139 P. 2d 418) upheld a similar enactment relating to members of the dental profession. In the *Bohl* opinion the court said:

". . . [S]ince the right to practice dentistry is a statutory privilege and not a natural right, the legislature may provide for the granting and revoking of licenses according to its own good will and pleasure, and that no constitutional inhibition impairs the force of its statutory declaration . . ." (p. 241.)

In the present case the respondent raises two specific points. First it is said the act makes no provision for staying the order of the board pending judicial review in district court. This is true, as we have said before. However, we do not consider this omission as

being fatal to the validity of the act. In 4A C. J. S., Appeal & Error, § 629, p. 424, we find the rule to be stated:

"The matter of supersedeas and stay of proceedings below on appeal or writ of error is in most jurisdictions, if not in all, the subject of express statutory provision, and the general rule now is that a supersedeas or stay can be had as a matter of right only where it is provided for by statute, and on a strict compliance with the terms and conditions prescribed by the statute, . . ."

Further elaboration of the rule is set out in § 632, on page 428:

"Since the matter of supersedeas or stay of proceedings on appeal or writ of error is regulated by statute, only those judgments, orders, or decrees which come within the operation of the statute are, or may be, superseded or stayed, . . ."

It should be borne in mind that the underlying purpose of licensing acts of this character is to afford protection to members of the public against unscrupulous, immoral or incompetent practitioners of the healing arts and allied professions. A somewhat similar situation was presented in the recent case of *Kansas State Board of Healing Arts v. Seasholtz,* 210 Kan. 694, 504 P. 2d 576, where we upheld an order of the board suspending the defendants' licenses to practice until a hearing might be completed on the petition which had been filed to revoke their licenses.

In the second place the respondent argues that the term "wrongful actions" set forth in K. S. A. 74-5324 (*e*) as a ground for revoking or suspending a license is unconstitutionally vague, that is, the term is so vague and uncertain that men of common intelligence and understanding will differ as to its meaning and application. In *Tri-State Hotel Co. v. Londerholm,* supra, we said our test for measuring vagueness is "whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice." (p. 765.)

We believe that a member of the profession to which the act applies would have no difficulty in comprehending what the term implies so far as his conduct as a psychologist is concerned. The American Psychological Association has adopted a code of ethics by which practicing psychologists are governed with respect to their professional behavior. Dr. Morra was aware of the association's code and he conceded in his testimony that actions of the nature charged against him would violate its provisions.

We consider the rationale of our decision in *Kansas State Board of Healing Arts v. Foote,* supra, as germane to the constitutional issue here. In *Foote,* the statute which authorized revocation or

suspension of a license to practice the healing arts (K. S. A. 65-2836) listed unprofessional conduct as one of the grounds for such action. K. S. A. 65-2837 recited that unprofessional conduct should consist of any one of fifteen enumerated acts, none of which included incompetency. Dr. Foote's license to practice medicine was revoked by the board on the ground of extreme incompetency in the management of cases under his care. In the course of our opinion upholding, in effect, the action taken by the board, we said:

"The doctrine of *expressio unius* has limited application . . . Considering the entire policy expressed in the act, we believe the legislature, by enumerating certain acts and classifying them as unprofessional conduct, did not thereby intend to exclude all other acts or conduct in the practice of the healing arts which by common understanding render the holder of a license unfit to practice. It would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. *Nor does any such failure leave the statute subject to attack on grounds of vagueness or indefiniteness.* Our statute makes no attempt to delineate what acts are included in the terms immoral or dishonorable conduct, which are also made grounds for revocation. The determination whether by common judgment certain conduct is disqualifying is left to the sound discretion of the board." (pp. 453, 454.) (Emphasis supplied.)

It is our opinion that the findings and judgment of the district court must be sustained, and it is so ordered.