No. 36,509

THE STATE BOARD OF DENTAL EXAMINERS, *Appellant,* v. DR. CLARENCE A. BOHL, *Appellee.*

(174 P. 2d 998)

Opinion filed December 7, 1946.

*Lester M. Goodell,* of Topeka, *Louis R. Gates,* of Kansas City, and *C. Glenn Morris,* of Oakland, Calif., were on the briefs for the appellant.

*Patrick W. Croker,* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was a proceeding to revoke the license of a dentist. We shall refer to the appellant as the board and to appellee by his name. The case was here before (*Bohl v. Teall,* 155 Kan. 505, 126 P. 2d 216), to review an order of the district court enjoining the board from conducting a hearing upon the complaint filed with the board against Doctor Bohl. The pertinent portions of the complaint are set out in the opinion. It was held the rules of procedure adopted by the board did not deny the accused the right to be fully heard upon the merits of the complaint. The court reversed the trial court and set aside the temporary injunction. Thereafter the board, having given proper notice, conducted a hearing at which the evidence in support of the complaint was presented and Doctor Bohl appeared with counsel and testified, and having considered the evidence the board revoked Doctor Bohl's license to practice dentistry. The case was here a second time (*Bohl v. Teall,* 157 Kan. 239, 153 P. 2d 916), to review a temporary injunction granted by the district court against the board, restraining the board from enforcing the order of revocation. The court reversed that order, holding that Doctor Bohl's remedy was by appeal to the district court and not by an independent action to enjoin the board from enforcing its order. Doctor Bohl then appealed to the district court, where the following judgment was rendered:

"This is an appeal by Dr. Clarence A. Bohl from an order of the Kansas State Board of Dental Examiners, dated November 9, 1942, revoking the appellant's license to practice dentistry in Kansas. The case having been twice before the Supreme Court (*Bohl v. Teall*, 155 Kan. 505, and 157 Kan. 239), no further summary will be made.

"The appeal has been submitted by agreement of counsel, without pleadings (other than the Notice of Appeal), upon a transcript of record, including exhibits, made before said Board, together with the proceedings, findings and order of said Board of November 9, 1942. No arguments were made nor Briefs filed. There has been no request for specific findings of fact and conclusions of law and therefore none are made.

"After a careful and complete examination of the transcript of evidence, exhibits and pertinent laws, the Court is of the opinion and does find that the order of the State Board of Dental Examiners in this case, dated November 9, 1942, was unreasonable, arbitrary, oppressive and illegal.

"It is therefore Ordered, Adjudged and Decreed that the Order of the Kansas State Board of Dental Examiners in this case, dated November 9, 1942, is unreasonable, arbitrary, oppressive and illegal, and the same is hereby set aside, revoked and declared to be void and of no effect."

The board filed a motion for a new trial, which was considered by the court and overruled, and the board duly perfected an appeal from the judgment of the court and its order overruling the motion for a new trial.

The pertinent portion of the statute then in force pertaining to the authority of the board to grant or refuse licenses to practice dentistry (G. S. 1935, 65-1407) reads:

"The board may refuse to issue the license provided for in this act, or may revoke such license if issued to the individuals who have by false or fraudulent representations obtained or sought to obtain said license or money or any other thing of value . . . or for any other dishonorable conduct."

At the time the proceedings were commenced there was also a statute enumerating things which were made unlawful for a dentist to do, section 2 of chapter 280 of the Laws of 1937 (G. S. 1941 Supp. 65-1417), which read as follows:

"It shall be unlawful for any person, firm or corporation engaged in the practice of dentistry to publish, directly or indirectly, or circulate any fraudulent, false, or misleading statements as to skill or method of practice of any person or operator in the practice of dentistry; or, in any way, to advertise to practice dentistry without causing pain; or to advertise in any manner with a view of deceiving the public or in any way that will tend to deceive or defraud the public; or to claim superiority over other dental practitioners; or to publish reports of cases or certificates of same in any advertising media; or to advertise as using any anesthetic, drug, formula, material, medicine, method or system, or to advertise free dental services or examination; or to advertise any amount as a price or fee for the service or services of any person engaged in

the practice of dentistry, or for any material or materials whatsoever used or to be used; or to employ 'cappers' or 'steerers' to obtain patronage or to exhibit or use specimens of dental work, posters, or any other media calling attention of the public to any person engaged in the practice of dentistry; or to give a public demonstration of skill or methods of practicing dentistry at any place other than his office where he is known to be regularly engaged in the practice of his profession; and every person committing an offense against any of the provisions of this section shall be guilty of a misdemeanor: *Provided,* That any licensed and registered dentist may display the name and title of the licensee on the premises where engaged in the profession, upon the windows thereof and by a door plate or name and title on office directly: *Provided,* That the name and title of the registrant shall not be displayed in lettering larger than six inches."

The next section contains the provision that:

"The board shall have the power to make such rules and regulations as are reasonably necessary to carry out and make effective the provisions and purpose of this act. . . ." (G. S. 1941 Supp. 65-1418.)

Prior to any of the circumstances which gave rise to this proceeding the Kansas Dental Association and the American Dental Association, of which it is a component, adopted codes of ethics, pertinent portions of which are set out in Appendix "A" and Appendix "B" hereto. Also, on March 30, 1939, the board adopted rules, the pertinent portions of which are set out in Appendix "C."

Early in April, 1941, Doctor Bohl, then practicing dentistry in Kansas City, began running advertisements in the Kansas City Kansan and The Shopper, newspapers in general circulation in Kansas City, of a kind which violated the statute above quoted, the Code of Ethics of the American Dental Association, and the rules of the board. The secretary of the board wrote Doctor Bohl, calling attention to that fact. Doctor Bohl replied, expressing his desire to conduct his business in an ethical way, and asked for specific information as to in what way he was not doing so. The attorney for the board called upon Doctor Bohl and made a full explanation to him of the objectional nature of his advertisements, furnished him copies of the Codes of Ethics, the board's rules, and referred him to the pertinent statute. Later the attorney wrote Doctor Bohl, referred to their interview, and again detailed the matters which had been discussed. This letter was referred to Mr. Joe E. Burris, a Missouri lawyer, with offices in Kansas City, Mo. He wrote the attorney for the board asking for an interview, which was granted. At the conference the entire matter was gone over and there was later correspondence between the attorneys, with the result that

Mr. Burris, on behalf of Doctor Bohl, took the position that while what he was doing was contrary to the rules of the board, the board had no authority to make such rules, and that everything considered Doctor Bohl was not engaged in unethical or dishonorable conduct in the respect of which complaint was made. The complaint in this action was filed before the board on November 15, 1941, and a copy of it sent to Doctor Bohl by registered mail, which also fixed a day for an inquiry as to whether or not a hearing should be had upon the complaint. At that hearing Doctor Bohl appeared with his counsel, and after hearing the parties the board concluded the complaint should be investigated. On the date set for the hearing the first injunction suit, mentioned earlier in this opinion, was filed. This tied the hands of the board until it was finally disposed of. Thereafter, the board set the matter for hearing on August 10, 1942, and gave due notice thereof. At that time Doctor Bohl and his attorney appeared and made an offer to cease the objectionable advertising if the complaint were dismissed. A hearing respecting the good faith of Doctor Bohl in making that offer was conducted and the board took that under advisement pending the final hearing. In its decision the board went fully into the complaint and the evidence, the pertinent portions of which are set out in Appendix "D" hereto.

An examination of the record discloses that competent evidence was before the board to sustain its findings and its final conclusion.

Since the matter was presented to the trial court upon the transcript of the record before the board, with no additional evidence, and there were no briefs filed or arguments made in the trial court, we are in as good position to pass upon this matter as the trial court was. Indeed, here we have briefs of counsel, and to that extent we are better prepared to pass upon it. From our examination of this record we find nothing in it which authorized or justified the trial court to find that the order of the board was unreasonable, arbitrary, oppressive and illegal. Certainly the board had given Doctor Bohl as fair treatment and consideration as anyone could expect to have. The testimony before the board justified its findings and our statute authorized the board to conduct such a hearing and to make the order revoking the license, if the evidence disclosed that should be done.

Indeed, there is much reason to apply to Doctor Bohl the terms the court applied to the board. A member of a profession which has high ethical standards in order that its members may have

the high standing in the community which their education and training justify, and which are beneficial to the health and welfare of those whom they serve, should conform to those standards. Apparently Doctor Bohl violated these standards, and when his attention was called to the matter he professed ignorance. This profession is open to serious doubt; but we pass that. With reasonable promptness he was informed in a personal interview and in writing by the board's attorney. Doctor Bohl then referred the matter to a Missouri attorney who may have been employed or selected by a Missouri layman, F. E. Cantrell, who had a substantial connection with Doctor Bohl's business. Doctor Bohl blocked a full inquiry into that connection by refusing to bring before the board his contract and records with Mr. Cantrell. Assuming that he was legally justified in so doing—a question which is not before us—it may be said that when a professional man's professional conduct is being inquired into he should withhold nothing from the inquiring body which is pertinent to his professional conduct. However, enough did get into the record on this point to tend to show conduct on the part of Doctor Bohl which the board might regard as being professionally dishonorable. It is not for this court, nor was it for the trial court, to pass upon the evidence before the board as to whether it established grounds for revoking the license of Doctor Bohl. The court has no authority to substitute its judgment for that of the board.

The legal questions relating to procedure of this kind are well established by former decisions of this court. See *State v. Creditor*, 44 Kan. 565, 24 Pac. 346; *Richardson v. Simpson*, 88 Kan. 684, 129 Pac. 1128; *Winslow v. Board of Dental Examiners*, 115 Kan. 450, 223 Pac. 308; *Crabb v. Board of Dental Examiners*, 118 Kan. 513, 235 Pac. 829; *Capland v. Board of Dental Examiners*, 149 Kan. 352, 87 P. 2d 597, and the authorities cited therein pertaining to dentists; and *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247; *Jones v. Board of Medical Examination*, 111 Kan. 813, 208 Pac. 639; *Brinkley v. Hassig*, 130 Kan. 874, 289 Pac. 64, and authorities cited therein pertaining to physicians; and *Depew v. Wichita Association of Credit Men*, 142 Kan. 403, 49 P. 2d 1041, and authorities cited therein as relating to attorneys.

Counsel for appellee cite *Capland v. Board of Dental Examiners*, supra, as controlling in behalf of Doctor Bohl here. In that case the board had not made rules authorized by statute, and that point

may be said to be the principal reason why the decision went against the board. In this case the rules had been adopted by the board prior to any of the conduct of Doctor Bohl which was complained of, a fact of which he either knew or was promptly informed before the proceedings in this case were started. On behalf of appellee it is argued that because some general definitions of dishonorable conduct were stated in the Capland case the board had no authority to embody in its rules a definition of dishonorable conduct. The point is not well taken. The general definitions of dishonorable conduct quoted in the opinion did not preclude the board from considering its own profession and making rules defining dishonorable conduct as being that which was opposed to the long standing Codes of Ethics of the profession.

The result is that the judgment of the court below must be reversed with directions to affirm the order of the board revoking the license of Doctor Bohl to practice dentistry in this state. It is so ordered.

### APPENDIX "A"

"CODE OF ETHICS OF THE KANSAS STATE DENTAL ASSOCIATION

"NOTE.—The Kansas State Dental Association is a component of the American Dental Association and therefore its members also adhere to the code of ethics of the American Dental Association in addition to the code of ethics of the Kansas State Dental Association.

---

### "CODE OF ETHICS

"SECTION 1. In his dealings with his patients and with his profession the conduct of the dentist should be in accordance with the Golden Rule, both in its letter and spirit.

"SECTION 2. It is unprofessional for a dentist to advertise by hand bills, circulars, cards, signs, or. in newspapers or in other publications calling attention to special methods of practice or claiming excellence over other practitioners, or to use display advertisements of any kind. This does not exclude a practitioner from using professional cards of suitable size, with names, titles, address and telephone number printed in modest type, nor having the same character of card in a newspaper or other publication. Neither does it prevent a practitioner who confines himself to a specialty from merely announcing his specialty on his professional card.

"SECTION 7. The dentist should be morally, mentally and physically clean, and honest in all his dealings with his fellow men, as comports with the dignity of a cultured and professonal gentleman."

## APPENDIX "B"

### "CODE OF ETHICS OF THE AMERICAN DENTAL ASSOCIATION

"In order that the dignity and honor of the dental profession may be upheld, its standards exalted, its sphere of usefulness extended, and the advancement of dental science promoted, and that the members of the American Dental Association may understand more clearly their duties and obligations to the dental profession, to their patients, and to the community at large, the following Code of Ethics is prescribed:

### "GENERAL DEPORTMENT

"SEC. 1. It is the duty of every dentist, and it shall be incumbent upon every member of this Association to govern his deportment in accordance with the underlying principles which have motivated the formulation of this Code. It is not assumed that the following articles cover the whole field of dental ethics; the dentist is charged with many duties and obligations in addition to those set forth herein. Briefly, the 'Golden Rule' should be conscientiously applied by every member of the dental profession.

### "ADVERTISING

"SEC. 2. *As an Inducement to Patronage in the Practice of Dentistry,* it is unethical and unprofessional for a dentist to employ, or permit the employment of handbills, posters, circulars, cards, signs, stereoptican slides, motion pictures, telephone, radio, newspapers, lectures, or any kind of printed or written publications or any other device for the purpose of

"(1) Advertising personal superiority or ability to perform services in a superior manner.

"(2) Advertising definite fixed fees, which in the nature of the professional services rendered must be variable.

"(3) Advertising statements that might be calculated to deceive or mislead the public.

"(4) Advertising any one or more types of dental service, thereby implying either superiority or lower than average fees in these fields.

"(5) Advertising under the name of a corporation, company, institution, clinic, association, parlor or trade name.

"(6) Advertising special or allegedly exclusive methods of practice or peculiar styles of service.

"(7) Advertising reports of cases or the possession of special certificates, diplomas, etc.

"(8) Employing or making use of advertising solicitors, free publicity press agents, radio announcers, entertainers or lecturers.

"(9) Guaranteeing or warranting operations.

"The fact of promulgation of any of the forms of advertising covered in this section shall be held to be satisfactory proof that the dentist named either employed or permitted the employment of the advertising message.

### "DIRECTORY ANNOUNCEMENTS

"SEC. 3. It is unethical for a dentist to permit the placing of his name in any city, commercial, telephone, or other public directory or directories in public or office buildings, using what is known as display type, or type that is in any way dissimilar from the standard in size, shape or color, or to use any

other device tending to give his name visual prominence over other names listed. It is likewise unethical for a dentist to permit the printing of his name in any kind of public directory under a heading such as 'Specialists,' 'Surgeon Dentists' or any other heading or device that might create in the mind of the reader the impression that the individual so listed is superior to those whose names appear under the simple heading—'Dentists.'

### "CARDS IN PRESS, ETC., SPECIALISTS

"SEC. 4. In communities in which it is customary for professional men to insert a card in the local press, or in programs for social events, theatres, etc., the same custom may be observed by the dentist, but such cards must be of modest size and type and shall not include more than the dentist's name, title, address, telephone number and office hours, nor shall it include any other device tending to give such announcement visual prominence over other names listed. If he confines himself to the practice of a specialty, he may announce in modest type—'practice limited to—' (announcing the specialty) but nothing more. This Association, however, believes the latter custom to be unbecoming to professional men and urges its members to abstain from such practice."

### APPENDIX "C"

#### "RULES OF THE KANSAS STATE BOARD OF DENTAL EXAMINERS

#### Adopted March 30, 1939

"The Code of Ethics as formulated by the American Dental Association and the Kansas State Dental Association is hereby adopted as the standard of honorable conduct for Doctors of Dental Surgery in the State of Kansas.

"The Kansas State Board of Dental Examiners considers the following as dishonorable conduct upon the part of any practicing dentist in the State of Kansas and any dentist may have his or her certificate of registration or license, or both, revoked or suspended by the Kansas State Board of Dental Examiners for any of the following causes:

"1. Violation of the Code of Ethics of the American Dental Association and/or the Code of Ethics of the Kansas State Dental Association.

"4. Dishonorable conduct shall also include, but not by way of limitation, making use, directly or indirectly, of any advertising statements of a character tending to deceive or mislead the public; advertising, directly or indirectly, professional superiority or the performance of professional services in a superior manner; advertising, directly or indirectly, prices for professional services; advertising, directly or indirectly, by means of large display, glaring light sign, or containing as a part thereof the representation of a tooth, teeth, bridge work or any portion of the human head; employing or making use of, directly or indirectly, advertising solicitors or free publicity press agents; or advertising, directly or indirectly, any free dental work or free examination; or advertising, directly or indirectly, to guarantee any dental service, or to perform any dental operation painlessly; the use of radio, directly or indirectly, by any dentist to advertise his or her professional qualifications, or fees; or to use specimens of dental work, posters, or using any other media calling

attention to the public to any person engaged in the practice of dentistry; or habitual intemperance or gross immorality; or the continued use of habit-forming drugs. PROVIDED, any dentist licensed may announce by way of professional card containing only the name, title, degree, office location, office hours, phone number, and residence address and phone number, if desired, and, if he limits his practice to a specialty, he may announce it, but such cards shall not be greater in size than three and one-half (3½) inches by two (2) inches, and such information may be inserted in public print when not more than one column in width and two inches in depth. . : ."

## APPENDIX "D"

"We find that Dr. C. A. Bohl is a resident of Kansas City, Kansas; that he is a graduate of the Kansas City Dental College, having graduated in 1917, and that year was licensed to practice dentistry in the State of Kansas, and since then and now holds a valid license to practice dentistry in the State of Kansas, and for the past three years has been practicing at 606 Minnesota Avenue, Kansas City, Kansas.

"Dr. C. A. Bohl inserted in the newspapers named, in the complaint, on the dates alleged, advertising as alleged and shown by Exhibits 'A,' 'B' and 'C.' He continued that type of advertising until after the decision of the Supreme Court in the injunction case above referred to, when the advertising was changed by reduction in size to one column wide and two inches high, containing the usual information of the professional card, but the name 'Dr C. A. Bohl,' was, in type and arrangement that of a display ad, and was display advertising.

"Exhibit 'A' was inserted in the newspapers from August, 1939, when licensee moved into this present location at 606 Minnesota Avenue, until May, 1941. Exhibit 'B' was inserted in the newspapers from May, 1941, until July 15, 1941, at which time Exhibit 'A' was again inserted until August 21, 1941. From August 24, 1941, Exhibit 'C' was inserted until after the Supreme Court decision in this case.

"Each advertisement was for the purpose of acquainting prospective patrons with licensee, with his location, what he did, and to secure their patronage and business, and to get them to his office for the purpose of determining what type of work they needed, and what service he could render that would be within the prospective client's financial capacity to pay.

"Each advertisement referred to 'plates' in display type and arrangement, and Exhibit 'C' used the words 'specializing in plate-work.' From 1939 until June 30, 1942, approximately 75% of licensee's work was plate-work. His advertising accounted for the fact that a majority of plaintiff's business was plate-work.

"Dr. C. A. Bohl is not a specialist, nor was he specializing, nor has he limited his practice to a specialty or to plate-work. He has engaged in the general practice, doing in addition to plate-work, crown work, filling, cleaning, extracting, X-ray, and repairing broken plates. He has not qualified himself as a specialist in plate-work by training, experience or by limitation of practice. The fact that 75% of his business has been plate-work during the last three years, is the result of advertising. While he advertised, as shown in

Exhibit 'C' that he was 'specalizing in plate-work,' he was engaged in the general practice, and was not limiting his practice to a specialty of plate or denture work. This advertising statement contained in Exhibit 'C' was not true, and Dr. C. A. Bohl knew it was not true. Through such false and fraudulent statements Dr. C. A. Bohl obtained patronage, business and money, and a major portion of his income, and thus by false and fraudulent representations obtained money, property and valuable patronage.

"The terms 'Specialize' and 'specializing' as used in connection with the practice of dentistry, have a definite meaning among doctors of dental surgery, and among the rank and file of laymen. It implies the idea of a dentist whose practice is limited to one branch of dentistry, and who has by training or knowledge special qualifications in that branch of dentistry. There are about thirteen branches of dentistry, in each of which there are specialists. Those who practice more than one branch are regarded as general practitioners by doctors of dental surgery and the lay public. This fact was known to Dr. C. A. Bohl.

"In Exhibits 'B' and 'C,' Dr. C. A. Bohl used the words 'moderate prices.' Price refers to recompense or compensation for a service or commodity. 'Moderate' is a relative term meaning to restrain, lessen or reduce. The term 'moderate price' as used by Doctor Bohl, indicated a lesser or reduced compensation for his service of usual quality. Most of licensee's clients were of the lower income group. His actual charge is based upon the patron's financial situation, and the doctor's service is in accordance with their ability to pay. This service includes the materials used. Doctor Bohl had no intention of charging for such services a reduced or lesser price than other dentists charged for like service. The statement 'moderate price' contained in Exhibits 'B' and 'C' were false and fraudulent representation to induce people to come to his office where he could determine the patient's financial condition, and sell him a service equal to his means of payment, rather than a regular service at a reduced or lesser price, as he represented by his advertisement, and he did thus obtain money, property, business and patronage by false representations.

"The display of a square with the words 'transparent dental plates' in black letters with a white and black border so arranged as to appear to illuminate the above words, and showing a set of teeth, as shown in Exhibit 'A,' was for the purpose of attracting the attention and the eye of the people who saw it, and to acquaint the public with the material, and Dr. C. A. Bohl, and that he was ready and willing to serve them. The descriptive words in Exhibit 'A,' 'beauty and visible cleanliness, pink material around the teeth, absence of taste and odor, strong and beautiful' were designed to attract the attention of prospective patients to qualities desirable in denture work, and to draw their attention to licensee as a dentist who employed these desirable materials. This advertising gives the impression that Dr. C. A. Bohl used material that is new, better or more desirable. It is display advertising. It is advertising containing representation of teeth, and advertising calling attention to Dr. C. A. Bohl, and advertising professional superiority.

"Exhibit 'B,' containing a picture of the doctor, and reference to different materials and type of work done, and containing words with large letters, and

by the arrangement of the ad constitutes display advertising. The picture of the licensee calls attention to him as engaged in the practice of dentistry, makes reference to materials to be used, advertises price for professional services, and constitutes statements tending to and did deceive and mislead the public.

"By Exhibit 'C,' Dr. C. A. Bohl published statements tending to and did deceive and mislead the public, and which advertised professional superiority, which called attention of the public to licensee, and by the arrangement of the printing, type and size constituted display advertising.

"Every condition of the mouth requiring dental treatment requires individual diagnosis and treatment. The ordinary lay public is not competent to judge the type of treatment, nor material that may be required for him for the particular condition that may exist, and no dentist is able to prescribe a material to fit an individual's case by advertising. There is no connection between materials mentioned in Exhibits 'A' and 'B' and that material which may be needed in a particular treatment upon a particular patient. Reference to materials in Exhibits 'A' and 'B' by Dr. C. A. Bohl were for the purpose of enticing prospective patients to the doctor's office for the purpose of securing their patronage, and to sell them his service whether the materials advertised were proper in the treatment of such a patient's case or not, and he did secure patronage by such advertising.

"Advertising tends to lessen and lower the moral responsibility and integrity of the dentists who employ it. Such a dentist relies upon volume of business with less time and work and care upon each case, and at such price for his service as he can get, rather than less patients and better quality of work. As a result of advertising licensee did dental work on a quantity basis.

"The Board is of the opinion that Dr. C. A. Bohl is guilty of dishonorable conduct. By the use of said advertisements, shown in Exhibits 'A,' 'B' and 'C,' he has employed advertising statements of a character tending to and which did deceive and mislead the public, and which advertises professional superiority, and which advertises price for professional services, and which advertising contains representation of teeth, and which makes reference to materials used or to be used, and which advertising calls attention of the public to Dr. C. A. Bohl as being engaged in the practice of dentistry other than by the use of a professional card limited in size and containing limited information, all contrary to the rules of the State Board of Dental Examiners, adopted March 30, 1939, defining what acts would be considered to constitute dishonorable conduct."

(After quoting part of section 2, chapter 280, Laws of 1937, continues): "The advertising as contained in Exhibits 'A,' 'B' and 'C' is contrary to the above quoted portion of the statute, which statute declares such acts to be a misdemeanor. The Board is of the opinion that the doing of acts which constitute a violation of the above statute, are below the standard of honesty and morality requisite to honorable conduct. Dr. C. A. Bohl advertised by use of Exhibits 'A,' 'B' and 'C' with a view to deceiving the public. He did tend to and did deceive and defraud the public. He claimed superiority over other practitioners, and advertised use of certain materials. By reason of this he is also guilty of dishonorable conduct.

"Because Dr. C. A. Bohl has obtained and sought to obtain patronage, business and money by false and fraudulent representations, and because he is guilty of dishonorable conduct, all as hereinbefore set out, his license to practice dentistry in Kansas should be revoked.

"At the beginning of the hearing on August 10th, and during the hearing, Doctor Bohl in substance offered to quit all types of advertising, except the professional card, if the Board would dismiss the complaint. Evidence was introduced regarding his sincerity in this respect. Certain evidence was produced relative to his office arrangement, and as to whether or not he was and had been practicing on his own behalf, or whether or not he was employed by a layman, F. E. Cantrell, of Kansas City, Missouri. The attorney for the Board asked that the doctor be required to produce his books with regard to what they might show upon said question. Upon objection by attorney for Doctor Bohl that such evidence was injecting charges not contained in the complaint, this request was withdrawn. None of this evidence in connection with the doctor's office arrangement has been considered by the Board in reaching its conclusions as to whether the doctor was guilty of the charges in the complaint; however, such evidence has been given consideration in considering the offer of Doctor Bohl to stop advertising.

"The Board has given considerable thought to this proposition. The Board feels its responsibility in the revocation of the license of a doctor whose livelihood to a large degree will be affected thereby, although the doctor is also licensed to do business in another state. The board also feels its responsibility to the public and the profession. It feels that the law regulating the practice of dentistry, and the requirement that doctors of dental surgery conform to standards of moral conduct recognized and accepted by the profession, are for the protection of the public from unscrupulous practitioners and charlatans who would prey upon the unsuspecting public.

"The underlying purpose of the law and the rules requiring these standards is not especially aimed at the honest and honorable member of the profession who may be prone to use unethical means of calling attention to his superiority, and indulge in what is referred to as bait-advertising, truthful in itself. The object and aim of the statute is to strike at the charlatan and unscrupulous practitioner who makes use of the same or similar methods to entice and lure an unsuspecting and credulous public, and by means of which they become the victims of his unscrupulousness. No law nor rule can be justified which would apply alone to the unscrupulous, but such standards must be general in their application, and rest alike upon all members of the profession, even if some innocent member of the profession, whose advertising statements are truthful, must yield to the necessity for such rules and standards in order to prevent the unscrupulous from preying upon the public.

"We do not believe that one who has committed acts constituting grounds for revoking his license can lawfully relieve himself of the consequences of his acts, when charged with them, by stating that he is then ready to cease committing such acts. The prohibition is to prevent practices prone to injure the public and the profession, and is not alone for the purpose of guiding some one particular doctor.

"We believe that the real question upon such offer of Dr. C. A. Bohl is to

determine whether or not under all the circumstances he had been fairly advised as to the objectionable character of his advertising and whether under all the circumstances it would be unfair to revoke such license. He stated he carried on the type of advertising in question under advice of private counsel that the same was lawful. He was aware of the decision of the Supreme Court of the State of Kansas in the case of *Capland v. Board of Dental Examiners,* 149 Kan. 352, and the opinion of Theodore F. Varner, Assistant Attorney General, given prior to that opinion. He was aware of the statute and the rules adopted by the Board following the decision of Capland v. Board of Dental Examiners. He was advised by the Secretary-Treasurer of the Board, by a letter, to cease such advertising. The attorney for the Board in June, 1941, advised him that such advertising constitutes false and fraudulent representations and dishonorable conduct. The attorney for the Board also discussed the matter with Doctor Bohl's attorney, who advised that such acts violated the law and the rules of the Board.

"At the hearing held December 15, 1941, the position taken by Doctor Bohl, and the refusal of the Board to consider it sufficient cause why the complaint should not be heard, was further advice to him that his construction was contrary to the law and rules as interpreted by the Board. Doctor Bohl has never misunderstood the Board's position. He has taken the position that the Board was without authority and if the Board had authority his acts were not contrary to the rules or the laws. No inclination to stop advertising was shown by Doctor Bohl until the hearing on August 10, 1942. The Board heard evidence as to his good faith upon such offer. Although we do not believe a good faith offer to stop advertising would relieve him of wrongful conduct, we do feel our responsibility in giving due consideration to it. Evidence was introduced tending to show that from 1939 until January, 1941, there was carried a bank account in the name of Kaw-Mo Dental Company, in which was deposited all income from the doctor's business; that during these years the doctor had no right to draw on said account, but that his secretary and F. E. Cantrell, a layman connected with the Eastern Dental Company, 1017 Walnut Street, Kansas City, Missouri, were authorized to draw upon said account. Doctor Bohl paid the rent to Cantrell, who had the lease upon the rooms occupied by Bohl, and the equipment in said office was returned for personal property tax by Doctor Bohl as agent for the owner, shown by said tax statement as F. E. Cantrell. The doctor stated that when he moved into his present location he made an arrangement to purchase the equipment from F. E. Cantrell, and that the arrangement regarding the bank account was to secure to F. E. Cantrell that he would receive his payment. That final payment was finally made about Christmas, 1940, and since that time Dr. C. A. Bohl has been the sole owner of said equipment; that during said period up until then he had retained about 30% of the income from the office, the balance going to pay overhead and to F. E. Cantrell. However, in March, 1942, Dr. C. A. Bohl again returned said equipment to his office for personal property tax to Wyandotte County as owned by F. E. Cantrell, and that he was authorized to make said return as agent. These tax returns were sworn to and signed by Dr. C. A. Bohl. Doctor Bohl stated that he kept books and had the records regarding transactions of himself and F. E. Cantrell. The written,

sworn tax returns are contrary to his oral explanations. He had it within his power to produce book and office records as evidence to sustain his oral contentions, but did not do so.

"We do not believe the explanation of the doctor with regard to his transactions and arrangement with F. E. Cantrell to be accurate. We are of the opinion that at the time of the hearing Dr. C. A. Bohl was not sincere in his offers to be honorable and ethical in the further conduct of his dental practice.

"We are of the opinion that Dr. C. A. Bohl, during the entire period of his advertising, was fully aware of and fully understood the position of the State Board of Dental Examiners and their interpretation of the statute, and the law applicable to such advertising, and willfully did the acts charged realizing the risk involved.

"We are further of the opinion that even if he was sincere at the time of the hearing, and desiring to then cease advertising of an objectionable character, the Board would not under all the circumstances be justified in dismissing the complaint.

"It Is, Therefore, Ordered by the Board that the license of Dr. C. A. Bohl, 606 Minnesota Avenue, Kansas City, Kansas, be and the same is hereby revoked."